UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
GENE CENTI and CAROL SEMASKEWICH,
administrators, on behalf of the estate of their
late daughter Christine Lynn Centi,
                Plaintiffs,

v.

GAYLE M. FEDIGAN,
                Defendant.
----------------------------------------------------------------x

**OPINION AND ORDER**

17 CV 325 (VB)

Briccetti, J.:

      Plaintiffs Gene Centi and Carol Semaskewich bring this wrongful death action on behalf of the estate of their deceased daughter Christine Lynn Centi, against defendant Gayle M. Fedigan. Plaintiffs allege Fedigan sold them a 1998 black Subaru Forester (the "car") and failed to warn them about the car's defective airbags.

      Before the Court is defendant's motion for summary judgment. (Doc. #45).

      For the reasons set forth below, the motion is GRANTED.

      The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332.

## BACKGROUND

      The parties submitted briefs, statements of material facts, declarations, and supporting exhibits. Together, they reflect the following relevant background.

      Tragically, plaintiffs' daughter Christine Centi was killed in a car accident in New Jersey, on January 14, 2015. This case concerns the ownership, sale, and condition of the car she was driving at the time of her death.

I.     The Fedigans Purchase the Car in 2007

      Gayle Fedigan purchased the car from her daughter and son-in-law in August 2007.

1

Sometime around 2010, the car's engine began to malfunction. Gayle's husband, Michael Fedigan, brought the car to Adalberto Padilla, a mechanic and the owner and president of Express Towing and Recovery ("Express Automotive") in New Windsor, New York. Padilla told Mr. Fedigan the car's engine needed to be replaced.

For nearly a year, Padilla kept the car in his yard while he looked for a replacement engine and the Fedigans considered whether they wanted to pay for the engine repair.

II.    The Fedigans Give the Car to Padilla

The Fedigans testified they decided in late 2011 to give the car to Padilla to use for parts. According to the Fedigans, on November 11, 2011, Ms. Fedigan signed the "seller" portion of the "transfer by owner" section of the car's title, and Mr. Fedigan printed Ms. Fedigan's name and address beneath her signature. Neither Gayle nor Michael Fedigan dated Gayle's signature.

Later that day, Mr. Fedigan went to Express Automotive to give the car to Padilla. Padilla testified Mr. Fedigan "said I could have it to use it for parts or whatever I wanted to do with it." (Doc. 47-5 ("Padilla Dep.") at 163). Padilla testified he told Mr. Fedigan that Padilla would use the car for parts. (See id. at 112–13).

Mr. Fedigan gave Padilla the car at no cost and also gave Padilla the car's title with only the seller portion filled out by Ms. Fedigan. Ms. Fedigan's signature remained undated. Neither the Fedigans nor Padilla filled out the buyer portion of the title, which according to Padilla, is commonplace when someone sells or gifts a vehicle for parts or to a junkyard.

Mr. Fedigan also removed the car's license plates. Within a week, he surrendered the plates to the New York State Department of Motor Vehicles (the "DMV") so as to cancel the car's registration in Ms. Fedigan's name. The car was subsequently removed from the Fedigans' insurance policy. Ms. Fedigan testified at that point, she no longer owned the car.

III.   Padilla Sells the Car to Philip Punch

At some point, rather than using the car for parts, Padilla sold the car for cash to Philip Punch.  Mr. Punch owned and operated Punch Auto Sales, a used car dealership in New Windsor, New York, with occasional help from his wife Michelle Punch.  Padilla testified he gave the car's title—signed by Ms. Fedigan, not Padilla—to Philip Punch and kept the money from the sale for himself.  The Fedigans never authorized Padilla to sell the car on their behalf, and Padilla did not tell the Fedigans he sold the car.

Mr. Punch never registered, insured, or obtained a license plate for the car.  However, he testified that at some point he owned the car.  (Doc. #47-7 ("P. Punch Dep.") at 31).

Mr. Punch parked the car outside an apartment complex in Salisbury Mills, New York, with a "for sale" sign.  The Punches also advertised the car for sale on Craigslist, using their then-six-year-old son's email address and Michelle Punch's phone number:

```
1998 SUBARU FORESTER L AWD WITH 125,XXX MILES...AUTO....ALL WHEEL
DRIVE...BLACK IN COLOR....GRAY CLOTH INTERIOR.....POWER WINDOWS....POWER
DOOR LOCKS.....CD PLAYER....CRUISE CONTROL....ICE COLD AC...RUNS AND DRIVES
GREAT......TIMING BELT, WATHERPUMP WAS JUST DONE .........FOR MORE
INFORMATION PLEASE CALL 845-401-7996!! THANK YOU FOR LOOKING.....
```

(Doc. #47-10).

The Fedigans never placed or authorized an advertisement for the car's sale.

IV.   The Centis Purchase the Car

In July 2013, either Gene or Christine Centi saw the Punches' Craigslist advertisement.  Gene Centi testified he called the number listed in the ad several times.  Phone records demonstrate that on July 11, 2013, Mr. Centi used his cell phone to call Ms. Punch's cell phone four times.  Phone records also show that later that night Ms. Punch's cell phone called Mr. Centi twice.  Ms. Punch testified she does not recall these phone calls.

The next day, Gene and Christine Centi traveled from New Jersey to New York to purchase the car. Mr. Centi testified he met the seller, a woman, in New York, but he could not remember any details.

The seller gave the Centis three documents.

<u>First</u>, the Centis received a bill of sale. It said: "I, Gayle Fedigan, am selling a '98 Subaru Forester, VIN number JF1SF6356WH752593 to Christine Centi in the amount of $1200. This vehicle is being sold as is." (Doc. 47-17 "Bill of Sale") (emphasis added)). The bill of sale was purportedly signed and dated by Gayle Fedigan. Ms. Punch testified she wrote the bill of sale—but she claims she is not the person who signed Ms. Fedigan's name. Ms. Punch offers no explanation of who signed the bill of sale. Ms. Fedigan testified the bill of sale and signature were a forgery.

<u>Second</u>, the Centis received the car's title. The title was signed by Gayle Fedigan and dated July 12, 2013. Ms. Fedigan does not dispute she signed the title but, as stated above, she testified she did so two years earlier, on November 11, 2011, when she and her husband gave the car and title to Padilla. Ms. Fedigan testified she never dated the title after signing it. The Fedigans testified neither of them dated the title at any point.

<u>Third</u>, the Centis received a New York State Department of Taxation and Finance Form 802 ("DTF-802" form) dated July 10, 2013. The form, which records the sale of a motor vehicle, included the car's year, make, and model; the Fedigans' home address; and Gayle Fedigan's purported signature. Ms. Punch testified she filled out the form but again denied signing Ms. Fedigan's name. The Fedigans testified they never filled out a DTF-802 form, and Ms. Fedigan never signed one.

The parties dispute who sold the car to the Centis: the Fedigans argue all the evidence indicates the Punches sold the car, and the Punches claim they do not recall having sold it. However, Ms. Punch also testified: "I could have potentially sold a car that I don't remember." (Doc. #47-8 ("M. Punch Dep.") at 53).

The parties agree the Fedigans were not aware of or involved in the car's sale to the Centis.

V.      The Centis' Ownership of the Car

Shortly after purchasing the car, Mr. Centi learned the car's "driver side rear axle had been removed." (Doc. #47-11 ("Centi Dep.") at 134). Mr. Centi called the seller—at Ms. Punch's phone number—regarding the missing axle. During that call, the seller told Mr. Centi, "You bought it in New York. New York is too bad, tough shit, it's your problem." (Id. at 171).

On January 14, 2015, Christine Centi was driving the car in Ringwood, New Jersey, when she crossed into opposing traffic and collided with two vehicles. The driver's side airbag did not deploy, and Christine Centi died as a result of the crash. Had the airbag deployed, the Centis maintain, Christine Centi would have survived the collision. The parties dispute whether the Fedigans were aware of any issues with the allegedly defective airbag.

## DISCUSSION

I.      Legal Standard

The Court must grant a motion for summary judgment if the pleadings, discovery materials before the Court, and any affidavits show there is no genuine issue as to any material fact and it is clear the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

A fact is material when it "might affect the outcome of the suit under the governing law. . . . Factual disputes that are irrelevant or unnecessary" are not material and thus cannot preclude summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

A dispute about a material fact is genuine if there is sufficient evidence upon which a reasonable jury could return a verdict for the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. at 248. The Court "is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." Wilson v. Nw. Mut. Ins. Co., 625 F.3d 54, 60 (2d Cir. 2010). It is the moving party's burden to establish the absence of any genuine issue of material fact. Zalaski v. City of Bridgeport Police Dep't, 613 F.3d 336, 340 (2d Cir. 2010).

If the non-moving party has failed to make a sufficient showing on an essential element of his case on which he has the burden of proof, then summary judgment is appropriate. Celotex Corp. v. Catrett, 477 U.S. at 323. If the non-moving party submits "merely colorable" evidence, summary judgment may be granted. Anderson v. Liberty Lobby, Inc., 477 U.S. at 249–50. The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts, and may not rely on conclusory allegations or unsubstantiated speculation." Brown v. Eli Lilly & Co., 654 F.3d 347, 358 (2d Cir. 2011) (internal citations omitted). The mere existence of a scintilla of evidence in support of the non-moving party's position is likewise insufficient; there must be evidence on which the jury could reasonably find for him. Dawson v. County of Westchester, 373 F.3d 265, 272 (2d Cir. 2004).

On summary judgment, the Court construes the facts, resolves all ambiguities, and draws all permissible factual inferences in favor of the non-moving party. Dallas Aerospace, Inc. v. CIS Air Corp., 352 F.3d 775, 780 (2d Cir. 2003). If there is any evidence from which a reasonable inference could be drawn in favor of the non-moving party on the issue on which

summary judgment is sought, summary judgment is improper. See Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc., 391 F.3d 77, 83 (2d Cir. 2004). The Court need only consider evidence that would be admissible at trial. Nora Bevs., Inc. v. Perrier Grp. of Am., Inc., 164 F.3d 736, 746 (2d Cir. 1998).

II. <u>Ms. Fedigan Did Not Owe Christine Centi a Duty to Warn</u>

Ms. Fedigan argues she owed no duty to warn Ms. Centi about the alleged condition of the car, because Ms. Fedigan did not sell the car to Gene or Christine Centi.

The Court agrees.

"Under New York law, . . . a plaintiff must establish three elements to prevail on a negligence claim: (1) the existence of a duty on defendant's part as to plaintiff; (2) a breach of this duty; and (3) injury to the plaintiff as a result thereof." Aegis Ins. Servs., Inc. v. 7 World Trade Co., 737 F.3d 166, 177 (2d Cir. 2013) (quoting Alfaro v. Wal-Mart Stores, Inc., 210 F.3d 111, 114 (2d Cir. 2000)). "Because a finding of negligence must be based on the breach of a duty, a threshold question in tort cases is whether the alleged tortfeasor owed a duty of care to the injured party." Id. (quoting Espinal v. Melville Snow Contractors, 98 N.Y.2d 136, 138 (2002)). "The injured party must show the defendant owed not merely a general duty to society but a specific duty to the plaintiff." Breitkopf v. Gentile, 41 F. Supp. 3d 220, 272 (E.D.N.Y. 2014). "[W]ithout a duty running directly to the injured person there can be no liability in damages, however careless the conduct or foreseeable the harm." Id.

"At most, the duty of a casual or occasional seller would be to warn the <u>person to whom the product is supplied</u> of known defects that are not obvious or readily discernible." Sukljian v.

7

Charles Ross & Son Co., 69 N.Y.2d 89, 90 (1986) (emphasis added).[1] A casual and occasional seller does not owe a duty to an individual who is not the direct purchaser. See, e.g., Benjamin v. Fosdick Mach. Tool Co., 2013 WL 3784139, at *2 (W.D.N.Y. July 18, 2013) (defendant, a casual seller, "owed no such duty to plaintiff" who was buyer's employee); Hernandez v. Biro Mfg. Co., 251 A.D.2d 375, 377 (2d Dep't 1998) ("Since [causal seller] Pork King did not sell the meat grinder to the plaintiff, it owed no duty to the plaintiff."); Clute v. Paquin, 219 A.D.2d 783, 784 (3rd Dep't 1995) (finding causal seller owed no duty to plaintiff, the buyer's employer).

Here, the undisputed evidence shows neither Gene nor Christine Centi directly purchased the car from Ms. Fedigan. No reasonable juror could find otherwise.

The parties agree the Fedigans were not aware of the car's sale to the Centis. Indeed, the Fedigans believed Padilla would scrap the car for parts. The Fedigans undisputedly had no contact whatsoever with the Punches or the Centis. Moreover, the Fedigans certainly were not aware of the car's sale to Mr. Punch, the Punches' advertisement on Craigslist, or the Punches' alleged sale to the Centis.

In short, even if plaintiffs were able to raise a genuine dispute of material fact as to whether Ms. Punch sold the car to the Centis despite the mountain of evidence indicating otherwise, plaintiffs have offered no evidence from which a reasonable juror could conclude Ms. Fedigan sold the car to the Centis.

Unable to demonstrate that the sale triggered a duty on Ms. Fedigan's behalf, plaintiffs argue a reasonable jury could conclude Ms. Fedigan's duties arose because her name was on the car's title, and she was technically the car's owner at the time of the sale.

---

[1] Because the parties agree Gayle Fedigan was no more than a casual and occasional seller, the Court need not address the duties manufacturers and retailers owe to their buyers.

The Court is not persuaded.

Courts do not determine ownership of a vehicle based solely on title; they also look to intent, possession, and control. See Dallura v. Rubicco, 6 A.D.3d 346, 347 (2d Dep't 2004) (despite title in seller's name, buyer's "possessory interest" and "attendant characteristics of dominion and control" vested ownership in the buyer). Plaintiffs have not identified any evidence of Ms. Fedigan's intent, possession, or control over the car. To the contrary, the undisputed facts show Ms. Fedigan gave the car to Padilla for parts in November 2011. The Fedigans filled out the seller portion of the title, removed the license plates, sent the plates to the DMV, and removed the vehicle from their insurance. Ms. Fedigan testified she did not consider herself the car's owner. Since that time, the Fedigans exercised no possession or control over the car whatsoever.

Accordingly, the undisputed evidence demonstrates there is no legal basis to hold Gayle Fedigan responsible for Christine Centi's death. Although Ms. Centi's death is tragic, the only question before this Court is whether Ms. Fedigan can be held legally accountable. The answer is no.

## CONCLUSION

The motion for summary judgment is GRANTED.

The Clerk is instructed to terminate the motion (Doc. #45) and close this case.

Dated: September 12, 2019
       White Plains, NY

SO ORDERED:

_____
Vincent L. Briccetti
United States District Judge